**JWB**

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Geoffrey Scott Gieck,   )   | No. CV 07-1143-PHX-NVW |
|                         )   | |
|          Plaintiff,     )   | **ORDER** |
|                         )   | |
| vs.                     )   | |
|                         )   | |
| Joe Arpaio,             )   | |
|                         )   | |
|          Defendant.     )   | |

Plaintiff Geoffrey Scott Gieck brought this civil rights action under 42 U.S.C. § 1983 against Maricopa County Sheriff Joseph Arpaio (Doc. # 5). Both parties have moved for summary judgment (Doc. ## 42, 44). The motions are fully briefed (Docs. ## 46, 48, 49, 52). The Court will deny Plaintiff's motion, grant Defendant's motion, and terminate this action.

**I.      Background**

Plaintiff's action concerns the mail policy in effect in Maricopa County Jails. In his First Amended Complaint Plaintiff asserted that Defendant implemented a mail policy that only allows inmates to receive metered postcards; no other type of mail is accepted. Plaintiff alleged that Defendant's policy violated his First and Eighth Amendment rights. Plaintiff specifically claimed that his family and friends were limited in expressing their feelings on postcards (Doc. # 5 at 3). However, despite the appointment of counsel to assist him, Plaintiff has been unable to proffer any facts, events, or injury specific to himself. Thus, this action is at most a challenge to the constitutionality of the mail policy on its face. The case

has turned out to reflect only Plaintiff's abstract objection to the mail policy. Defendant is entitled to summary judgment on this mere facial challenge.

### A. The Mail Policy

The policy provides that inmates may receive an unlimited number of mail pieces, without any restriction on the content of the communication,[1] so long as the communication is written in blue or black ink on a common post card,[2] and the postage is metered (DSOF ¶ 23).[3] Inmates may also receive a total of 5 photographs, so long as nothing but an inmate's name and booking number is written on the back (PSOF ¶ 19). An exception to the policy has been made for mail from inmates incarcerated in the Arizona Department of Corrections (ADC). Mail from ADC inmates may use stamps, which are manually removed from the postcard before distribution to the inmate (DSOF ¶¶ 24-25).

### B. Parties' Summary Judgment Motions

Defendant moved for summary judgment on the ground that the mail policy complies with the reasonableness standard articulated in Turner v. Safely, 482 U.S. 78, 84 (1987). He specifically argued that the mail policy was necessary to combat the smuggling of contraband into the jails and to redirect resources from screening mail to security assignments (Doc. # 42 at 7). Further, Defendant contended that the policy is content neutral and that no reasonable alternatives to this mail policy existed (id. at 9). In support of his motion, Defendant submitted the affidavit of Jack MacIntyre, Deputy Chief, Custody Bureau One for the MCSO (Doc. # 43, Ex. A, MacIntyre Aff.).

Plaintiff cross-moved for summary judgment, arguing that the Turner reasonableness standard is not applicable to this case because he is a pretrial detainee (Doc. # 44 at 7).

---

[1] Inmates may not send or receive mail that contains directions to assault, kill, or intimidate other inmates or staff (Doc. # 43, Def.'s Statement of Facts (DSOF) ¶ 29).

[2] The postcard must be between 3.5 inches by 4.25 inches and 4.25 inches by 6 inches in size (Doc. # 45, Pl.'s Statement of Facts (PSOF) ¶ 17).

[3] It is important to note that this policy does not affect "privileged" mail. That is, legal correspondence that an inmate receives from his or her attorney of record (DSOF ¶ 5).

Plaintiff maintained that an intermediate standard of scrutiny must be applied to review the mail policy. In either event, Plaintiff argued that the mail policy fails under either the reasonableness or intermediate tests because it is neither content neutral nor narrowly tailored and ready alternatives exist to the policy (id. at 10-12). In support of his motion, Plaintiff submitted information regarding Plaintiff's incarceration in the Maricopa County Jails, excerpts from the deposition of Deputy Chief MacIntyre, a copy of the jails' prior mail policy, and information regarding the new mail policy (Doc. # 45, Exs. 1-6).

In response to Defendant's summary judgment motion, Plaintiff reiterated his argument that an intermediate standard of review must be used to analyze the jails' mail policy (Doc. # 46 at 4-5). He maintained that Defendant has failed to demonstrate that no less intrusive means are available to advance the legitimate governmental interest addressed by the policy (id. at 5). Alternatively, Plaintiff contended that the policy is invalid under Turner because it fails to provide inmates with an alternative means of "communication with any semblance of privacy" and that there are "obvious and easy alternatives" to limit contraband smuggling into the jails (id. at 6-7). Finally, Plaintiff contended that no rational connection exists between the ban on colored ink, writing on the back of photographs, stamps, envelopes, and postcards of differing sizes, and the goal of limiting contraband smuggling (id. at 7).

In his reply, Defendant contended that Plaintiff failed to introduce any authority that requires a court to employ an intermediate standard of scrutiny of the mail policy (Doc. # 48 at 2). Moreover, Defendant argued that Plaintiff failed to introduce any affidavit testimony, or other evidence, establishing that his or others' communication was hindered in any way by the mail policy (id.). Defendant also maintained that no easy or obvious alternatives to the policy exist that will avoid administrative inconvenience (id. at 4-5). And finally, Defendant reiterated that the ban on colored ink is related to the legitimate correctional goal of eliminating the use of other ink colors that can signify gang activity or using blood as ink (id.).

1  Defendant responded to Plaintiff's summary judgment motion, stating that Plaintiff
2 failed to present any evidence that the policy has impacted him or his family and, therefore,
3 his motion must be denied (Doc. # 49 at 2).

4  Plaintiff replied in support of his summary judgment motion (Doc. # 52). Plaintiff
5 contended that the mail policy, while facially neutral, does limit the expression of inmates
6 and their family members because they can express themselves to the extent they feel
7 comfortable (id. at 2). Finally, Plaintiff reiterated his contention that an intermediate
8 standard of scrutiny should be applied to the mail policy (id. at 3-4).

9 **II.    Facial Challenge**

10 **As has been noted, Plaintiff attempts a facial challenge to the mail policy.** But
11 facial challenges are disfavored for several reasons. First, claims of facial invalidity often
12 rest on speculation. Washington State Grange v. Washington State Republican Party, 128
13 S. Ct. 1184, 1191 (2008). As a consequence, they raise the risk of "premature interpretation
14 of statutes on the basis of factually barebones records." Id. (quoting Sabri v. United States,
15 541 U.S. 600, 609 (2004) (internal quotation marks and brackets omitted)). Facial challenges
16 also run contrary to the fundamental principle of judicial restraint that courts should neither
17 "'anticipate a question of constitutional law in advance of the necessity of deciding it'" nor
18 "'formulate a rule of constitutional law broader than is required by the precise facts to which
19 it is to be applied.'" Ashwander v. TVA, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)
20 (quoting Liverpool, New York & Philadelphia S.S. Co. v. Commissioners of Emigration, 113
21 U.S. 33, 39 (1885)). And finally, a facial challenge to a policy is the most difficult challenge
22 to mount successfully, because a plaintiff must establish that "no set of circumstances exists"
23 under which the policy could be valid. United States v. Salerno, 481 U.S. 739, 745 (1987);
24 U.S. v. Dang, 488 F.3d 1135, 1142 (9th Cir. 2007). Plaintiff has not introduced any evidence
25 from which the Court could conclude that "no set of circumstances exists" under which the
26 policy could be valid. This facial challenge to the jail's mail policy fails on the record of this
27 case.
28 ///

### III. Standard of Review

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (*per curiam*) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)). Further, "[p]revention of criminal activity and the maintenance of prison security are legitimate penological interests which justify the regulation of both incoming and outgoing prisoner mail." O'Keefe v. Van Boening, 82 F.3d 322, 326 (9th Cir.1996); see, *e.g.*, Witherow, 52 F.3d at 265 (noting that security, order, and rehabilitation are legitimate penological interests that justify the inspection of outgoing prisoner mail).

But the threshold question is what standard of review must be used to analyze the jails' mail policy. Defendant contends that the reasonableness standard articulated in Turner is the appropriate standard.[4] Plaintiff maintains that because the Maricopa County Jails hold pretrial detainees *and* convicted prisoners, Turner's reasonableness standard is inapplicable and an intermediate level of scrutiny must be used.[5] In support of his argument, Plaintiff points to the unique status of pretrial detainees and cites to Johnson v. California for the proposition that intermediate scrutiny must be utilized in cases where a policy impinges on fundamental rights of pretrial detainees. 543 U.S. 499, 505 (2005).

In Johnson, the Supreme Court reviewed the California Department of Corrections' unwritten policy of racially segregating prisoners in reception centers each time they entered a new correctional facility. The Supreme Court explicitly held that "*all* racial classifications [imposed by government] . . . must be analyzed by a reviewing court under strict scrutiny."

---

[4] To determine whether a regulation is reasonably related to a legitimate penological interest, the court must consider: (1) if there exists a valid, rational connection between the prison regulation and the legitimate governmental interest put forth to justify it; (2) whether there are alternative means of exercising the regulated right that remain open to the inmate; (3) the impact that accommodation of the asserted constitutional right will have upon guards, other inmates, and prison resources; and (4) whether there exist ready alternatives that fully meet the inmate's demands at a *de minimis* cost to valid penological interests. Turner, 482 U.S. at 89-91.

[5] To satisfy this standard, Defendant must prove that "[no] less intrusive means than those employed are available" to achieve the legitimate governmental interest attempted to be furthered by the policy. Boos v. Barry, 485 U.S. 312, 329 (1988).

1  Johnson, 543 U.S. at 505 (citing Adarand Constructors, Inc. v. Peña, 515 U.S. 200, 227
2  (1995)) (emphasis in original).  Plaintiff appears to extrapolate from that holding a rule that
3  simply does not exist.  Johnson only addressed racial classifications and reaffirmed the
4  practice of applying strict scrutiny to *all* governmental racial classifications because "[r]acial
5  classifications raise special fears that they are motivated by an invidious purpose." Id.  The
6  Supreme Court did not apply a higher standard in Johnson based on the plaintiff's status as
7  a pretrial detainee.  Moreover, the Court did not indicate that its holding would apply in any
8  other context.  Simply put, Johnson is inapposite to this case and Plaintiff's reliance on it is
9  misplaced.

10       Johnson's inapplicability does not end the inquiry regarding the proper standard of
11  review because pretrial detainees' claims are treated differently than those of convicted
12  prisoners in some contexts.[6]  But Plaintiff has not cited any precedent that status as a pretrial
13  detainee mandates the use of an intermediate standard of scrutiny.  Moreover, Bell
14  recognized that the concern for security is the same for pretrial detainees as for convicted
15  inmates.  441 U.S. at 546 n. 28.  Most importantly, and contrary to Plaintiff's contention,
16  there are myriad cases in the Ninth and other circuits that have employed the Turner standard
17  when reviewing policies promulgated by county jails that impinge on pretrial detainees' First
18  Amendment rights.  See Von Minden v. Jankowski, 2008 WL 638085 (5th Cir. March 7,
19  2008) (unpublished); Jones v. Salt Lake County, 503 F.3d 1147, 1153 (10th Cir. 2007);
20  Mauro v. Arpaio, 188 F.3d 1054, 1058 (9th Cir. 1999); Freeman v. Arpaio, 125 F.3d 732,
21  736 (9th Cir. 1997), abrogated on other grounds by Shakur v. Schriro, 514 F.3d 878, 884-85

---

[6] The Fourteenth Amendment Due Process Clause prohibits punishment of pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 536 (1979). Thus the Bell standard has been applied to Maricopa County Jail policy found to be punitive in intent. Demery v. Arpaio, 378 F.3d 1020,1029 (9th Cir. 2004). To determine whether a regulation survives the Bell standard, the Court must determine whether there is an express intent to punish, or "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Bell, 441 U.S. at 538 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)).

(9th Cir. 2008); Williams v. Alameda County Sheriff's Dept., 990 F.2d 1266 (9th Cir. 1993) (unpublished); Friend v. Kolodzieczak, 923 F.2d 126, 127 (9th Cir. 1991). In view of this precedent and the absence of a facially punitive purpose to the mail policy, the Court finds that Turner is the appropriate standard. This conclusion is further bolstered by the recent Ninth Circuit decision in Pierce v. County of Orange, 526 F.3d 1190, 2008 WL 2052408 (9th Cir. May 15, 2008). The court in Pierce explicitly applied Turner to pretrial detainees' claims involving religious exercise. Id., at *14. The court also recognized the requirement that any policy affecting pretrial detainees cannot be intended to serve a punitive interest. Bell, 441 U.S. at 535.

Consequently, the jails' mail policy will be analyzed using the standard articulated in Turner, while also remaining cognizant of Bell's prohibition of punishment before conviction.

## IV. Legal Standard

### A. Summary Judgment

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by

1 affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a
2 genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076. The
3 opposing party need not establish a material issue of fact conclusively in its favor; it is
4 sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the
5 parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv.
6 Co., 391 U.S. 253, 288-89 (1968).

7 In assessing whether a party has met its burden, the court views the evidence in the
8 light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052,
9 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the nonmovant.
10 Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002). On cross-motions for
11 summary judgment, the court must consider each motion separately to determine whether
12 either party has met its burden with the facts construed in the light most favorable to the
13 non-moving party. Fed. R. Civ. P. 56; Fair Hous. Council of Riverside County, Inc. v.
14 Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001).

15 **V.    Analysis of the Jails' Mail Policy under Turner**

16 As stated, when a prison regulation impinges on inmates' First Amendment rights, the
17 regulation is valid if it is reasonably related to legitimate penological interests. Turner, 482
18 U.S. at 89; O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). To determine whether
19 a regulation is reasonably related to a legitimate penological interest, the court must consider:
20 (1) if there exists a valid, rational connection between the prison regulation and the legitimate
21 government interest put forth to justify it; (2) whether there are alternative means of
22 exercising the regulated right that remain open to the inmate; (3) the impact accommodation
23 of the asserted constitutional right will have upon guards, other inmates, and prison
24 resources; and (4) whether there exist ready alternatives which fully meet the inmate's
25 demands at a *de minimis* cost to valid penological interests. Turner, 482 U.S. at 89-91.
26 Evaluation of penological objectives is committed to the considered judgment of prison
27 administrators who are actually charged with and trained in the running of the particular
28

1 institution under examination. O'Lone, 482 U.S. at 349. The Court will address each factor
2 in turn.

### A. Rational Connection to Legitimate Governmental Interests

The first factor requires a determination whether the governmental objective underlying the policy is (1) legitimate, (2) neutral, and (3) whether the policy is rationally related to that objective. Thornburgh, 490 U.S. at 414.

Initially, Defendant must advance a "valid, rational connection" between a policy or procedure and the legitimate governmental interest cited to justify it. Turner, 482 U.S. at 90. "Specifically, the 'logical connection between the regulation and the asserted goal' must not be 'so remote as to render the policy arbitrary or irrational,' and the governmental objective must be both 'legitimate and neutral.'" Frost v. Symington, 197 F.3d 348, 354 (9th Cir. 1999) (quoting Turner, 482 U.S. at 89-90).

Defendant identifies that the purpose of the mail policy is to "prevent the smuggling of contraband [into the jails] to promote the safety and security of the inmates and MCSO Deputies working within the jail system" (Doc. # 42 at 5; DSOF ¶ 26). Defendant's affiant, Deputy Chief Jack MacIntyre, attests that between 9,000 and 10,000 inmates are incarcerated within the Maricopa County jail system at any given time (Doc. # 43, Ex. A, MacIntyre Aff. ¶ 8). Further, each day the Maricopa County jails receive roughly between 2,000 and 4,000 pieces of mail for inmates (id. ¶ 9). Each piece of mail is inspected to determine whether contraband was contained in the envelope (id. ¶ 11). MacIntyre further explains that during the past three years, the MCSO has experienced an increase in the number of incidents of attempted smuggling of contraband into the jail system (id. ¶¶ 6, 31). Specifically, (1) the back of postage stamps have contained various drugs, bodily fluids, and other unknown liquids and powders and (2) notepad bindings have been hollowed to conceal contraband such as handcuff keys, metal strips or pieces, and saw blades (id. ¶ 14). In response to the growing number of incidents of contraband smuggling, the MCSO crafted and implemented the instant mail policy to limit the method of communication without limiting the substance

of communication between inmates and others (id. ¶ 20).  Defendant concludes that this policy is the most effective means to combat contraband smuggling in the jails (id. ¶ 39).

Turner makes clear that jail security is a legitimate penological interest.  482 U.S. at 91.  Defendant's evidence demonstrates that the reduction of contraband smuggling is a legitimate goal of the Maricopa County Jails and that the mail policy is reasonably related to furthering that goal.  The policy is also neutral on its face—there is nothing to indicate that the aim of the policy is to suppress expression.  Thornburgh, 490 U.S. at 415-16 ("the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression).

In opposition, Plaintiff contends that an inference can be drawn to suggest that the purpose of the policy is punitive in nature (Doc. # 47, Pl.'s Objections to Def.'s Statement of Facts ¶ 18).  But Plaintiff's assertion that a punitive motive is the moving force behind the mail policy is not supported by specific facts or evidence.  Moreover, Plaintiff provides no argument as to why the mail policy does not survive the first prong under Turner.  Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  As such, Plaintiff's request for summary judgment on this claim will be denied.

Indeed, "when the inmate does not present enough evidence to refute a common-sense connection between a prison regulation and the objective that government's counsel argues the policy was designed to further . . . Turner's first prong is satisfied.  Frost, 197 F.3d at 357 (internal quotations omitted).  When construing the facts in Plaintiff's favor, he fails to show that there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  This factor favors Defendant.

### B.     Alternative Means of Communication

The second factor for consideration is "whether there are alternative means of exercising the right that remain open to prison inmates."  Turner, 482 U.S. at 90.  "Where 'other avenues' remain available for the exercise of the asserted right, courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials

- 10 -

. . . in gauging the validity of the regulation.'" Id. (citations omitted). Further, the Court must view the right in question "sensibly and expansively." Thornburgh, 490 U.S. at 417 (quotations omitted).

Here, the right in question is the ability to communicate with family and friends. Pope v. Hightower, 101 F.3d 1382, 1385 (11th Cir. 1996). Defendant contends that inmates' right to communicate is not limited; that an inmate may send and receive an unlimited amount of mail without any limitation on the content of such mail (DSOF ¶ 23). The only restriction is that communication through the mail must be written on a postcard.

Plaintiff strongly claims that the mail policy restricts the ability to communicate *with any semblance of privacy*, and that no alternative means of communication exists (Doc. # 46 at 6). But this argument fails for three reasons. First, if Plaintiff has a right to effective communications, that purpose may be served by more means that just closed mail. Thornburgh mandates that the right be viewed "expansively," which gives weight to other effective means. Second, the notion that inmates had the ability to communicate with privacy prior to the mail policy is simply not true. Plaintiff acknowledges that mail has always been subject to search (PSOF ¶ 8). And jail or prison officials are free to record conversations between prisoners or between a prisoner and his visitor. United States v. Hearst, 563 F.2D 1331, 1343-49 (9th Cir. 1977); Williams v. Nelson, 457 F.2d 376, 377 (9th Cir. 1972).

But the most fundamental and formidable bar to Plaintiff's argument is his failure to adduce *any* evidence—affidavit or otherwise—to support it. The argument in his summary judgment motion is simply insufficient to demonstrate a genuine issue of material fact on this factor. See British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978) (legal memorandum is not evidence and cannot create an issue of material fact). Indeed, Plaintiff is still able to receive and send an unlimited amount of mail, receive visitors, and speak on the telephone. In the absence of any specific evidence to the contrary, the Court concludes that inmates have alternative means of communication. This factor favors Defendant

### C. Adverse Impacts of Accommodation on Prison Staff, Other Inmates, and Prison Resources

The third factor requires the Court to analyze the impact of allowing inmates to send and receive mail other than postcards would have on prison personnel, other inmates, and the allocation of jail resources. Mauro, 188 F.3d at 1061 (citing Turner, 482 U.S. at 90).

Defendant has introduced evidence that non-postcard mail increases the likelihood of smuggling contraband into the jail, thereby causing conflict between inmates, confrontations, and violent acts relating to contraband transactions among inmates. Further, the influx of contraband smuggling resulted in a significant increase in the use of staff resources inspecting non-legal mail for contraband (DSOF ¶¶ 17-18).

Plaintiff has not addressed this factor of the Turner analysis. Consequently, he has not met his burden of refuting Defendant's claim that allowing inmates to use sealed envelopes containing letters, notepads, and other items would threaten the safety and security of inmates and guards who might be endangered by the contraband smuggled in the jail. On this very limited record, the Court concludes that "the right in question 'can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike[.]'" Thornburgh, 490 U.S. at 418 (citing Turner, 480 U.S. 90). Therefore, "the court should defer to the 'informed discretion of corrections officials.'" Id. This factor weighs in Defendant's favor.

### D. Existence of Obvious, Easy Alternatives

The final factor requires the Court to determine whether the mail policy is an "exaggerated response" to the jail's concerns. Mauro, 188 F.3d at 1062. On this prong, Plaintiff bears the burden to show there are obvious, easy alternatives to the regulation. Id.; see O'Lone, 482 U.S. at 350. Turner also explained:

> This is not a "least restrictive alternative" test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. But if an *inmate* claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

- 12 -

Turner, 482 U.S. at 90-91 (emphasis added) (citations omitted).

Plaintiff has offered three alternatives: (1) disposing of envelopes when mail reaches the jail, (2) enacting a prohibition on notepads and birthday cards, and (3) requiring jail personnel to be searched for contraband (Doc. # 45 at 6-7). But fatal to Plaintiff's argument is his failure to proffer any evidence that these alternatives would not cause administrative inconvenience or would result in only *de minimis* cost to the jail. Thornburgh, 490 U.S. at 419. In contrast, Defendant has submitted undisputed evidence that the mail policy also serves to permit detention officers to spend more time on jail security assignments as opposed to searching inmate mail for contraband (DSOF ¶ 33). Therefore, disposing of envelopes and a ban on notepads and birthday cards does not address this aspect of the goal of the policy. In the absence of any quantification of alternative solutions, the Court must conclude that Plaintiff has not met his burden to show any obvious or easy alternatives to the mail policy. This factor also favors Defendant.

### E. Other Aspects of the Mail Policy

Plaintiff has also argued that the ban on colored ink, writing on the back of photographs, stamps, envelopes, and various sized postcards bears no rational relationship to the goal of eliminating contraband smuggling. But, again, argument by counsel, unsupported by evidence, does not create an issue of material fact. See British Airways Bd., 585 F.2d at 952. Moreover, Defendant has introduced evidence that facially supports his claim that a ban on colored ink, stamps, writing on photographs, envelopes, and size requirements for postcards is rationally related to a legitimate penological purpose.

## VI. Bell's Prohibition on Punishment

In his First Amended Complaint, Plaintiff explicitly stated that the mail policy violated his Eighth Amendment rights. Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, which protects against the use of punishment. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Redman v. County of San Diego, 942 F.2d 1435, 1440 (9th Cir. 1991). For a particular governmental action to constitute punishment, the action must cause the detainee to suffer some harm or disability, and the

purpose of the action must be to punish the detainee. Demery, 378 F.3d at1029 (citing Bell, 441 U.S. at 538). Plaintiff has failed to adduce any evidence to support the mail policy has a punitive intent in either his summary judgment motion or in response to Defendant's motion. Indeed, Plaintiff made only a single reference to the argument that the mail policy is driven by a punitive intent in his controverting statement of facts (Doc. # 47 ¶ 18). In the absence of any evidence supporting this point, the Court cannot conclude that the intent of the mail policy is to punish pretrial detainees before conviction. Bell, 441 U.S. at 538.

## VII. Conclusion and Application of the Court's Holding

Plaintiff has brought his counsel a case without facts, with no proof that the jails' mail policy hurt him in any specific way. This challenge to the legality of the mail policy on its face alone fails. Judgment must be entered against Plaintiff, but it is stillborn precedent for the Defendant. A real case with real facts or a different challenge of the context and justification of the mail policy, with supporting evidence, would demand a fresh look.

**IT IS THEREFORE ORDERED:**

(1) Defendant's Motion for Summary Judgment (Doc. # 42) is **GRANTED**.

(2) Plaintiff's Motion for Summary Judgment (Doc. # 44) is **DENIED**.

(3) The Clerk shall enter judgment in favor of Defendant that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 23rd day of June, 2008.

_____
Neil V. Wake
United States District Judge